UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| JOHN W. BROWN, | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) | No. 3:20-cv-00916 |
|  | ) |  |
| BILL B. LEE, GOVERNOR OF THE | ) |  |
| STATE OF TENNESSEE, et al., | ) |  |
|  | ) |  |
| Defendants. | ) |  |

**MEMORANDUM OPINION**

John W. Brown filed a pro se Complaint against Governor Bill B. Lee, Tennessee Bureau of Investigation ("TBI") Director David B. Rausch, the State of Tennessee, the Metropolitan Government of Nashville and Davidson County ("Metro"), and John and Jane Does. (Doc. No. 1.) Brown has also filed an application to proceed in this Court as a pauper. (Doc. No. 2.) The case is before the Court for a ruling on the application and initial review of the Complaint.

**I.  Application for Leave to Proceed as a Pauper**

The Court may authorize a person to file a civil suit without paying the filing fee. 28 U.S.C. § 1915(a). Brown is 69 years old and has a small monthly disability income that is exceeded by his basic expenses. (See Doc. No. 2.) Furthermore, he reports no significant discretionary expenses, cash reserves, or assets. (Id. at 2-3.) It appears that Brown cannot pay the full civil filing fee in advance without undue hardship. Accordingly, the application will be granted.

**II.  Initial Review of the Complaint**

The Court must conduct an initial review of the Complaint and dismiss any action filed in forma pauperis if it is frivolous, malicious, fails to state a claim upon which relief may be granted,

or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); see also Ongori v. Hawkins, No. 16-2781, 2017 WL 6759020, at *1 (6th Cir. Nov. 15, 2017) ("[N]on-prisoners proceeding in forma pauperis are still subject to the screening requirements of § 1915(e).").

### A. Standard of Review

In reviewing the Complaint, the Court applies the same standard as under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Hill v. Lappin, 630 F.3d 468, 470–71 (6th Cir. 2010). Thus, the Court "must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." Tackett v. M & G Polymers, USA, LLC, 561 F.3d 478, 488 (6th Cir. 2009) (citing Gunasekera v. Irwin, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). The Court must then consider whether those factual allegations "plausibly suggest an entitlement to relief," Williams v. Curtin, 631 F.3d 380, 383 (6th Cir. 2011) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 681 (2009)), that rises "above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). The Court need not accept as true "unwarranted factual inferences," DirectTV, Inc. v. Treesh, 487 F.3d 471, 476 (6th Cir. 2007) (quoting Gregory v. Shelby Cnty., 220 F.3d 433, 446 (6th Cir. 2000)), and "legal conclusions masquerading as factual allegations will not suffice." Eidson v. Tenn. Dep't of Children's Servs., 510 F.3d 631, 634 (6th Cir. 2007).

"Pro se complaints are to be held to less stringent standards than formal pleadings drafted by lawyers, and should therefore be liberally construed." Williams, 631 F.3d at 383; Erickson v. Pardus, 551 U.S. 89, 93 (2007) (citing Estelle v. Gamble, 429 U.S. 97 (1976)). Even under this lenient standard, however, pro se plaintiffs must meet basic pleading requirements and are not

exempted from the requirements of the Federal Rules of Civil Procedure. Martin v. Overton, 391 F.3d 710, 714 (6th Cir. 2004).

### B. Factual Background

Liberally construing the Complaint, Brown makes the following allegations.[1] In December 1985, Brown, a Black man, was convicted of aggravated rape by an all-white jury in the Circuit Court of Hickman County, Tennessee. (Doc. No. 1 at 4.) Brown's appeal was denied by the Tennessee Court of Criminal Appeals ("TCCA") on the ground that the issues were waived when his trial counsel failed to file a motion for a new trial. (Id.) In December 1987, Brown's state petition for post-conviction relief was granted based on ineffective assistance of counsel, and Brown was allowed to file a motion for a new trial. (Id. at 4-5.) In March 1988, the trial court held a hearing and denied the motion for a new trial. (Id. at 5.) In April 1989, the TCCA denied Brown's appeal. (Id.) In June 1989, the Tennessee Supreme Court denied review. (Id.)

In 2001 or 2002, the Hickman County Circuit Court appointed an "inept jailhouse lawyer" to help Brown seek further redress from his "unjust sentence and conviction." (Id.) Brown does not know the nature of the petition that this attorney filed on his behalf. (Id.) Brown later hired private counsel and professed to him "absolute innocence" of the charge. (Id.) However, this counsel "abandoned [Brown's] cause." (Id. at 6.) In 2012-13, Brown made several unsuccessful attempts to obtain records related to his criminal investigation from the Tennessee Department of Correction ("TDOC"), the 21st Judicial District, and the TCCA. (Id. at 6-8.) In March 2013, Brown received a memorandum from the TDOC Deputy Commissioner stating the requested records were confidential under the Tennessee Public Records Act. (Id. at 7.) Brown maintains his innocence of the aggravated rape charge, asserts that he has been unable to obtain relief through the judicial

---

[1] The Court has streamlined Plaintiff's allegations and discusses only those necessary for initial review.

3

process, and claims that "numerous substantive constitutional failures" occurred. (Id.) He contends that he is "deserving of relief" because his conviction and sentence are manifestly unfair. (Id.)

On June 3, 2015, Brown was released on parole after serving 30 years of his 40-year sentence of imprisonment. (Id.) He was told to report to the Davidson County Sheriff's Office ("DCSO") to register as a sex offender. (Id. at 9.) On September 2, 2020, Brown wrote to the TBI requesting to be removed from Tennessee's sex offender registry ("SOR"). (Id.) The TBI denied Brown's request on the ground that Tennessee law imposes lifetime registration and monitoring requirements upon persons convicted of a sexually violent offense. (Id. at 8-9.) The TBI stated that it would not respond to further requests for removal from the SOR unless Brown's conviction for aggravated rape was overturned or Brown received exoneration. (Id.) Brown alleges that his placement on the SOR occurred as a result of systemic racial discrimination against Black men. (Id. at 10.) He also alleges that placement on the SOR has resulted in injury including denial of employment and housing opportunities. (Id.)

**C.     Analysis**

The Court liberally construes the Complaint[2] to assert claims under 42 U.S.C. §§ 1983 and 1985, as well as the Tennessee constitution. The Complaint also references 38 U.S.C. §§ 511(a) and 5301. Brown seeks damages, declaratory relief, injunctive relief, and attorney's fees. The Court addresses each claim in turn.

---

[2] The rambling Complaint contains many repetitive paragraphs filled with legal jargon, making it very difficult to parse. It is not the role of the Court to suggest legal theories or create absent causes of action. Young Bok Song v. Gipson, 423 F. App'x 506, 510 (6th Cir. 2011). Nevertheless, given Brown's status as a pro se litigant, the Court has liberally construed the Complaint based on the totality of Brown's factual and legal references.

4

1.  Claims Under 38 U.S.C. §§ 511(a) and 5301

The Complaint invokes, but does not discuss, 38 U.S.C. §§ 511(a) and 5301. (See Doc. No. 1 at 1.) To the extent Brown intends to bring a claim under either of these provisions, the claims must be dismissed. These statutory provisions concern veteran's benefits. Section 511(a) vests determinations of veteran's benefits in the Secretary of Veteran's Affairs and review of those determinations in the Board of Veteran's Appeals. See Brent v. Dep't of Veterans Affs. Debt Mgmt. Ctr., No. 19-CV-2446-TLP-DKV, 2020 WL 1889008, at *3 (W.D. Tenn. Feb. 11, 2020), report and recommendation adopted, 2020 WL 917288, at *1 (W.D. Tenn. Feb. 26, 2020). Section 5301 exempts veteran's benefits from the judicial process. See Mack v. Tenn. Dep't of Corr., No. 3:18-CV-01382, 2019 WL 4342975, at *1 (M.D. Tenn. Sept. 12, 2019). Here, however, Brown makes no factual allegations concerning veteran's benefits. Thus, any purported claim under these statutes must be dismissed for failure to state a claim.

2.  Claims Under 42 U.S.C. § 1985

A Section 1985 claim requires, among other things, that the accused conspirators enter the conspiracy "for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws." Vakilian v. Shaw, 335 F.3d 509, 518 (6th Cir. 2003) (quoting United Bd. of Carpenters & Joiners v. Scott, 463 U.S. 825, 828-29 (1983) (internal quotation marks omitted)). Thus, a plaintiff is required to "allege both a conspiracy and some class-based discriminatory animus behind the conspirators' action." Pahssen v. Merrill Cmty. Sch. Dist., 668 F.3d 356, 367 (6th Cir. 2012) (quoting Newell v. Brown, 981 F.2d 880, 886 (6th Cir. 1992)). Furthermore, a plaintiff must allege "that the alleged conspirators *shared* a common discriminatory objective." Id. at 368 (emphasis in original). The question at this stage is, therefore, whether Brown has pled that Defendants' concerted actions were motived by "some racial, or perhaps otherwise

5

class-based, invidiously discriminatory animus." <u>Vakilian</u>, 335 F.3d at 519 (quoting <u>Griffin v. Breckenridge</u>, 403 U.S. 88, 102 (1971)). Brown must allege that Defendants "possessed discriminatory intent" based upon a class protected by the Equal Protection Clause, and acted together to treat Brown differently "from another class that was similarly situated." <u>Id</u>. (citing <u>Farm Labor Org. Comm. v. Ohio St. Highway Patrol</u>, 308 F.3d 523, 534 (6th Cir. 2002)).

Here, the Complaint alleges that Defendants conspired together in a common scheme or plan and that SOR is racially discriminatory. These two allegations in isolation, however, are insufficient to state a Section 1985 conspiracy claim. The Complaint does not contain the required allegation that Defendants were motivated by a *shared* racial animus and, based upon that animus, acted *together* to treat Brown differently from another similarly-situated person. The Court cannot insert such allegations for Brown. Thus, while the Complaint raises the spectre of discrimination, it does not plausibly allege that Defendants acted together with the purpose of discriminating against Brown. Because there is no colorable claim that Defendants conspired with the required discriminatory intent, Brown's Section 1985 claims must be dismissed for failure to state a claim.

### 3. <u>Claims Under 42 U.S.C. § 1983</u>

Section 1983 creates a cause of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. <u>Wurzelbacher v. Jones-Kelley</u>, 675 F.3d 580, 583 (6th Cir. 2012). Thus, to state a Section 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution or laws of the United States, and (2) that the deprivation was caused by a person acting under color of state law. <u>Carl v. Muskegon Cnty.</u>, 763 F.3d 592, 595 (6th Cir. 2014).

Brown's Section 1983 claims can be divided into two groups: claims related to his criminal conviction and claims challenging the constitutionality of the Tennessee Sexual Offender and

6

Violent Sexual Offender Registration, Verification and Tracking Act of 2004, Tenn. Code Ann. §§ 40-39-201, et seq. ("SORA").[3]

### a. Claims Related to Criminal Conviction

Brown alleges both that unspecified errors were made during the state post-conviction relief process and that he is actually innocent of the crime for which he was convicted and sentenced. To the extent Brown seeks redress for these matters under Section 1983, the claims must be dismissed because Brown may not challenge his conviction or sentence in this manner. The exclusive vehicle to challenge a state court conviction or sentence in federal court is a habeas corpus petition under 28 U.S.C. § 2254. Furthermore, Brown may not pursue a suit for money damages under Section 1983 when such an award would "necessarily impl[y] the invalidity of [his] sentence." Hill v. McDonough, 547 U.S. 573, 580 (2006) (citing Heck v. Humphrey, 512 U.S. 477, 487 (1994)); see also, e.g., In re Campbell, 874 F.3d 454, 461 (6th Cir. 2017) (explaining that "[a] prisoner who seeks a judgment declaring 'the fact or duration' of his sentence unconstitutional must proceed under the habeas statutes, and cannot proceed under § 1983") (citing Heck). Here, the relief Brown seeks necessarily implies the invalidity of his state conviction or sentence. Accordingly, Brown's Section 1983 claims arising from dissatisfaction with his state conviction or sentence must be dismissed.[4]

---

[3] "SORA" stands for "Sex Offender Registration Act," an acronym often used to refer to many states' acts, including Tennessee's—even though that is not actually the present name for the Act.

[4] Even if these claims were not barred by Heck and its progeny, they are clearly untimely. The statute of limitations for claims brought under Section 1983 in Tennessee is one year. Jordan v. Blount Cnty., 885 F.3d 413, 415 (6th Cir. 2018) (citing Tenn. Code Ann. § 28-3-104(a)). Under federal law, the limitations period generally "begins to run when the plaintiff knows or has reason to know that the act providing the basis of his or her injury has occurred." Harrison v. Michigan, 722 F.3d 768, 773 (6th Cir. 2013) (quoting Collyer v. Darling, 98 F.3d 211, 220 (6th Cir. 1996)). Here, because the Complaint was filed on October 23, 2020, Brown may pursue only Section 1983 claims that accrued on or after October 22, 2019. However, the events described in the Complaint related to Brown's state criminal conviction and post-conviction relief process occurred long before 2019 – namely, between 1985 and 2013. (See Doc. No. 1.)

b.     Claims Concerning the Sex Offender Registry

Brown also brings as-applied constitutional challenges to SORA.[5] Specifically, Brown claims that, as applied to him, SORA violates the Ex Post Facto Clause and the First, Fourth, Sixth, Eighth, Ninth, and Fourteenth Amendments of the United States Constitution. Brown brings these claims against Metro, the State of Tennessee, and Governor Lee and TBI Director Rausch in their individual and official capacities.[6]

i.     Metro

Metro is subject to suit under Section 1983. See Hadrick v. City of Detroit, Mich., 876 F.3d 238, 243 (6th Cir. 2017) (citing Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690-92 (1978)). However, Metro does not have vicarious liability under Section 1983 for the actions of its employees. Connick v. Thompson, 563 U.S. 51, 60 (2011). Rather, Brown must allege: (1) that he suffered a constitutional violation; and (2) that a policy or custom of Metro directly caused the violation. See Hadrick, 876 F.3d at 243 (citing Monell, 436 U.S. at 690-92).

Judge Aleta A. Trauger of this Court recently considered Metro's potential municipal liability in the context of several as-applied constitutional challenges to SORA.[7] See Jordan v.

---

[5] The gravamen of the Complaint is the claim that SORA is invalid in the fact-specific context of its application to Brown. For this reason, and because facial challenges are disfavored particularly when an as-applied challenge is also made, Washington State Grange v. Washington State Republican Party, 552 U.S. 442, 450 (2008), the Court does not view the Complaint as stating a colorable claim that SORA should be stricken in toto as facially unconstitutional. See Warshak v. United States, 532 F.3d 521, 529 (6th Cir. 2008) (noting that the point of a facial attack is "to leave nothing standing," because success on a facial challenge to a statute requires "that no set of circumstances exists under which the Act would be valid") (quoting United States v. Salerno, 481 U.S. 739, 745 (1987)).

[6] These claims are timely because "plaintiffs challenging the constitutionality of the [SORA] as applied to them may rely on "a 'continuing violation' theory of when their causes of action accrued." Burns v. Helper, No. 3:18-CV-01231, 2019 WL 5987707 (M.D. Tenn. Oct. 24, 2019), report and recommendation adopted, No. 3:18-CV-01231, 2019 WL 5964546 (M.D. Tenn. Nov. 13, 2019) (quoting Doe v. Haslam, Nos. 3:16-cv-02862, 3:17-cv-00264, 2017 WL 5187117, at *11 (M.D. Tenn. Nov. 9, 2017)).

[7] Judge Trauger addressed this issue in the context of a request for preliminary injunctive relief.

William, No. 3:19-CV-00907, 2020 WL 4676477, at *9-11 (M.D. Tenn. Aug. 12, 2020); Reid v. Lee, No. 3:20-CV-00050, 2020 WL 4501457, at *9-11 (M.D. Tenn. Aug. 5, 2020). In Jordan and Reid, the court discussed the unsettled state of the law in this Circuit regarding whether a municipality can violate Section 1983 by enforcing a state law alleged to be unconstitutional. Judge Trauger noted that "there is at least some reason" to infer that Metro may be held liable on such a claim. Jordan, 2020 WL 4676477, at *11; Reid, 2020 WL 4501457, at *11. However, the court identified two relevant questions: (1) whether Metro had a "meaningful choice" about whether and how to enforce the relevant state law; and, if so, (2) whether the "discrete policy to enforce" the relevant law "represented a conscious choice by a [Metro] policymaker." Jordan, 2020 WL 4676477, at *10-11 (citations omitted); Reid, 2020 WL 4501457, at *10-11 (citations omitted). In the case of SORA, Judge Trauger generally answered the first question in the affirmative, but, regarding the second question, Judge Trauger observed that a court must consider the allegations of the complaint to "determine whether [the plaintiff] has adequately asserted that his constitutional injury is the result of a conscious decision of a Metro policymaker." Jordan, 2020 WL 4676477, at *11; Reid, 2020 WL 4501457, at *11.

Here, assuming that Metro had a "meaningful choice" in whether and how to enforce SORA, Brown does not allege any "conscious decision of a Metro policymaker" in the Complaint. Rather, Brown alleges only that DCSO employees placed him on the SOR pursuant to state law and referred him to the TBI when he sought to be removed from the SOR. (See Doc. No. 1 at 10.) Thus, Brown merely alleges that one or more DCSO employees followed SORA.[8] Compare with

---

[8] The Complaint suggests that Metro failed to train these employees. (See Doc. No. 1 at 16-17.) This can also be a path to municipal liability, but a plaintiff must allege "(1) that a training program is inadequate to the tasks that the officers must perform; (2) that the inadequacy is the result of the [County's] deliberate indifference; and (3) that the inadequacy is closely related to or actually caused the plaintiff's injury.'" Roell v. Hamilton Cnty., Ohio/Hamilton Cnty. Bd. of Cnty. Comm'rs, 870 F.3d 471, 487 (6th Cir. 2017) (quoting Brown v. Chapman, 814 F.3d 447, 463 (6th Cir. 2016)). Brown has not attempted to do so here.

9

Jordan, 2020 WL 4676477, at *11 (describing allegations in the complaint of a conscious decision by Metro policymakers to amend the duties of the Metro-Nashville Police Department Sex Crimes Unit to include "responsibility for" offender registration, offender compliance, and coordination of enforcement actions from which the court concluded it may infer the intention "not to except offenders with pre-registry crimes from enforcement"); Reid, 2020 WL 4501457, at *11 (same). Brown's allegations, therefore, fall short of the mark necessary to maintain plausible municipal liability claims against Metro. Brown's Section 1983 claims against Metro must, therefore, be dismissed for failure to state a claim.

## ii. State of Tennessee

Brown's Section 1983 claims against the State of Tennessee must be dismissed due to sovereign immunity. Each state possesses certain immunities from suit that "flow from the nature of sovereignty itself as well as the Tenth and Eleventh Amendments." Ernst v. Rising, 427 F.3d 351, 358 (6th Cir. 2005) (en banc). Consequently, the State of Tennessee generally has sovereign immunity from suit in federal court. Seminole Tribe of Florida v. Florida, 517 U.S. 44, 54 (1996); Boler v. Earley, 865 F.3d 391, 409-10 (6th Cir. 2017) (citing Ernst, 427 F.3d at 358).

"There are three exceptions to sovereign immunity: (1) when the state has waived immunity by consenting to the suit; (2) when Congress has expressly abrogated the states' sovereign immunity, and (3) when the doctrine set forth in Ex Parte Young, 209 U.S. 123 (1908), applies." Boler, 865 F.3d at 410 (citing Puckett v. Lexington-Fayette Urban Cnty. Gov't, 833 F.3d 590, 598 (6th Cir. 2016)). None of these exceptions apply here, because the State of Tennessee has not consented to this suit, "Section 1983 does not abrogate Eleventh Amendment immunity," id. (citing Will v. Mich. Dep't of State Police, 491 U.S. 58, 66 (1989)), and "[t]he Ex Parte Young doctrine applies [only] when the lawsuit involves an action against state officials, not against the

10

state itself." Puckett, 833 F.3d at 598 (citing S & M Brands, Inc. v. Cooper, 527 F.3d 500, 507-08 (6th Cir. 2008)). Accordingly, Eleventh Amendment sovereign immunity bars Brown's claims against the State of Tennessee. The Court will, therefore, dismiss Brown's Section 1983 claims against the State of Tennessee without prejudice for lack of jurisdiction. See Carmichael v. City of Cleveland, 571 F. App'x 426, 435 (6th Cir. 2014) (citing Ernst, 427 F.3d at 367) ("Dismissals for lack of jurisdiction based on Eleventh Amendment immunity should be made without prejudice.").

iii. Individual-Capacity Claims Against Governor Lee and TBI Director Rausch

Brown sues Governor Lee and TBI Director Rausch in their individual capacities. However, Brown makes no allegation that these Defendants were personally involved in violating his constitutional rights. "Persons sued in their individual capacities under § 1983 can be held liable based only on their own unconstitutional behavior." Heyerman v. Cnty. of Calhoun, 680 F.3d 642, 647 (6th Cir. 2012); see also Murphy v. Grenier, 406 F. App'x 972, 974 (6th Cir. 2011) ("Personal involvement is necessary to establish section 1983 liability."). Moreover, because there is no respondeat superior liability under Section 1983, supervisory officials are not liable in their individual capacities unless they "either encouraged the specific incident of misconduct or in some other way directly participated in it." Hall v. Trump, No. 3:19-cv-00628, 2020 WL 1061885, at *5 (M.D. Tenn. Mar. 5, 2020) (citing Hays v. Jefferson Cnty., Ky., 668 F.2d 869, 874 (6th Cir. 1982)). Here, Brown does not allege that Lee or Rausch personally participated in the development or implementation of SORA, placement of Brown on the SOR, enforcement of SORA against Brown, or refusal to remove Brown from the SOR. That Lee or Rausch hold attenuated supervisory positions over those charged with implementing SORA is insufficient to plausibly allege a claim

11

for individual liability. Accordingly, the individual-capacity claims against Lee and Rausch must be dismissed.

> iv. Official-Capacity Claims Against Governor Lee and TBI Director Rausch

Brown also sues Lee and Rauch in their official capacities. To the extent these claims are for money damages, Lee and Rausch are protected by Tennessee's sovereign immunity because they stand in the shoes of the state. Ernst, 427 F.3d at 358; Boler, 865 F.3d at 410. Accordingly, Brown's official-capacity claims for money damages must be dismissed without prejudice for lack of subject-matter jurisdiction.

Brown also brings official-capacity claims against Lee and Rausch for prospective injunctive relief – that is, Brown's release from SORA's registration requirements. (See Doc. No. 1 at 18.) Tennessee's sovereign immunity does not shield Lee and Rausch from these claims. Ernst, 427 F.3d at 358-59 (citing Ex Parte Young, 209 U.S. 123, 155-56 (1908)). Accordingly, the Court considers whether Brown states a colorable claim. See Haslam, 2017 WL 5187117, at *9-10 (holding that both the Tennessee Governor and TBI Director are appropriate defendants to official-capacity claims for prospective injunctive relief based on constitutional challenges to SORA).

First, Brown's claim based on the Ninth Amendment must be dismissed for failure to state a claim. The Sixth Circuit has expressly held that the Ninth Amendment "does not confer substantive rights in addition to those conferred by other portions of our governing law."[9] Gibson v. Matthews, 926 F.2d 532, 537 (6th Cir. 1991). Thus, Brown's claim fails "simply because the Ninth Amendment does not guarantee any particular right." Spencer, 2020 WL 5573769, at *10.

---

[9] "This amendment was added to the Bill of Rights to ensure that the maxim *expressio unius est exclusio alterius* would not be used at a later time to deny fundamental rights merely because they were not specifically enumerated in the Constitution." Spencer v. City of Hendersonville, No. 3:19-CV-00983, 2020 WL 5573769, at *10 (M.D. Tenn. Sept. 17, 2020) (citations omitted).

12

Second, Brown has not plausibly alleged a claim based on the First or Fourth Amendments. The Complaint does not contain any facts to suggest how SORA impacts Brown's First Amendment rights (such as an alleged regulation of speech) or Fourth Amendment rights (such as an alleged search or seizure). While the Complaint occasionally references "malicious prosecution," which can be the basis for a Section 1983 claim under the Fourth Amendment, see Sykes v. Anderson, 625 F.3d 294, 308-09 (6th Cir. 2010), Brown makes no allegation that he has been prosecuted for any violation of SORA. See id. at 308 (explaining that the threshold allegation for a malicious prosecution claim under Section 1983 is that "a criminal prosecution was initiated against the plaintiff"). Thus, Brown has not stated a plausible malicious prosecution claim. These claims must, therefore, be dismissed.

Third, Brown fails to state a colorable claim under the Sixth or Eighth Amendment. The Sixth and Eighth Amendments pertain to criminal actions. Specifically, the Sixth Amendment guarantees indigent defendants the right to counsel during critical stages of state or federal criminal prosecutions, Turner v. United States, 885 F.3d 949, 952 (6th Cir. 2018), and the Eighth Amendment protects incarcerated persons from the imposition of cruel and unusual punishment. Rafferty v. Trumbull Cnty., 915 F.3d 1087, 1093 (6th Cir. 2019). However, the Sixth Circuit has held that SORA is a civil, regulatory statute that does not impose criminal punishment. Doe v. Bredesen, 507 F.3d 998, 1004 (6th Cir. 2007); see also Cutshall v. Sundquist, 193 F.3d 466, 477 (6th Cir. 1999) (considering an earlier version of the Act). Accordingly, these claims must be dismissed because Brown "cannot show that [SORA] itself violates his Sixth or Eighth Amendment rights." Burns, 2019 WL 5987707, at *7.

Fourth, Brown's Fourteenth Amendment due process claims must be dismissed. Brown's procedural due process claim has been foreclosed by the Supreme Court. See Connecticut

13

Department of Public Safety v. Doe, 538 U.S. 1 (2003) (holding that procedural due process claims against sex offender registration laws that turn on the fact of an individual's conviction for a particular offense are not cognizable because "convicted offender[s] ha[ve] already had a procedurally safeguarded opportunity to contest" the fact of their conviction). Brown's substantive due process claim is inadequately pled because he does not allege that SORA "burdens a fundamental right and cannot withstand strict scrutiny." Beydoun v. Sessions, 871 F.3d 459, 467 (6th Cir. 2017) (quoting Bangura v. Hansen, 434 F.3d 487, 494 (6th Cir. 2006)). Specifically, Brown alleges only that he has been "denied employment opportunity" and "denied housing" due to being placed on the SOR. (Doc. No. 1 at 10.) These are not, however, deprivations of a protected interest that trigger anything above rational basis review. See, e.g., Haslam, 2017 WL 4187117, at *16 (collecting cases and explaining that there is no fundamental right to private employment); Burns, 2019 WL 5987707, at *7 (collecting cases and concluding substantive due process claim to be implausible where SORA registrant alleged only residency restrictions and difficult obtaining employment).

Brown has, however, stated a colorable claim under the Equal Protection Clause of the Fourteenth Amendment. The Equal Protection Clause commands that "no state shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. A plaintiff must plausibly allege that the government treated him "disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis." Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby, Mich., 470 F.3d 286, 299 (6th Cir. 2006). The Sixth Circuit has held that "sex offenders" are not a suspect class, Does v. Munoz, 507 F.3d 961, 966 (6th Cir. 2007), and that Tennessee "has a rational basis for treating sex offenders differently from other offenders." Id.

(citing Cutshall, 193 F.3d at 482-83). Here, however, Brown's equal protection claim is not based upon mere sex offender status. Brown, a Black man, alleges that his placement on the SOR occurred as part of the systemic racially discriminatory administration of SORA, which results in Black men being placed on the SOR at twice the rate of white men. (Doc. No. 1 at 10.) Thus, Brown has plausibly alleged that SORA impermissibly burdens him as a member of a suspect class. At this early stage, these allegations are sufficient to allow Brown's Equal Protection claim to proceed for further development.

Brown also has stated a colorable claim under the Ex Post Facto Clause of the U.S. Constitution. The Constitution provides that "No State shall . . . pass any . . . ex post facto Law." U.S. Const. art. I § 10, cl. 1. However, the Constitution "does not bar all retroactive lawmaking, but only retroactive punishment." Does v. Snyder, 834 F.3d 696, 699 (6th Cir. 2016). "[T]he very essence of the constitutional protection against ex-post-facto laws" is "that a defendant . . . who was charged with a criminal violation . . . cannot be punished for conduct occurring before the [relevant] criminal regulation of that conduct." United States v. Utesch, 596 F.3d 302, 312-13 (6th Cir. 2010). Thus, the Ex Post Facto Clause "forbids the [legislature] . . . to enact any law which imposes a punishment for an act which was not punishable at the time it was committed; or imposes additional punishment to that then prescribed." United States v. Kruger, 838 F.3d 786, 790 (6th Cir. 2016) (quoting Weaver v. Graham, 450 U.S. 24, 28 (1981)); see also Cutshall, 193 F.3d at 476 ("The clause is designed to protect against legislative abuses and to provide fair notice of the consequences of criminal actions.").

"In other words, the Ex Post Facto Clause does not merely protect a defendant from some specific procedurally improper conduct at the time his punishment is set down—it protects him from the punishment itself." Haslam, 2017 WL 5187117, at *13. Accordingly, where a plaintiff

15

alleges that placement on the SOR constitutes a "continuing imposition" of punishment for conduct that preceded the enactment of SORA, federal courts in Tennessee have concluded that the plaintiff states a plausible claim for relief under the Ex Post Facto Clause. See, e.g., Jordan, 2020 WL 4676477, at *4-21 (discussing Ex Post Facto Clause in context of SORA and concluding that plaintiff demonstrated likelihood of success on the merits of as-applied challenge); Doe v. Rausch, 382 F. Supp. 3d 783, 799-800 (E.D. Tenn. 2019) (granting plaintiff summary judgment on as-applied Ex Post Facto constitutional challenge to 2014 Amendments to SORA); Haslam, 2017 WL 5187117, at *13-14 (denying motion to dismiss as-applied Ex Post Facto constitutional challenges to SORA).

Brown alleges that he was placed on the SOR for a conviction that occurred before SORA became law. He further alleges that he suffers an ongoing imposition of punishment. Moreover, Brown alleges that he has suffered collateral injuries to his quality of life from being placed on the SOR and that state officials refuse to remove him from the SOR. Brown has, therefore, plausibly alleged that his placement on the SOR violates the Ex Post Facto Clause. This claim may proceed for further development.

### 4. Claim Under the Tennessee Constitution

Brown also brings a supplemental claim under the Ex Post Facto Clause of the Tennessee Constitution. Although the United States and Tennessee constitutions are generally interpreted in a similar manner, Tennessee "state constitutional protections remain on the books and can provide an alternative theory for relief" than the federal constitution. Nunn v. Tenn. Dep't of Corr., 547 S.W.3d 163, 188-89 (Tenn. Ct. App. 2017) (internal quotation marks and citation omitted). Thus, a plaintiff may seek a declaratory judgment concerning the constitutionality of a rule or order under Tennessee's Uniform Administrative Procedures Act, Tenn. Code Ann. § 4-5-225(c) ("UAPA").

See id. (explaining that, pursuant to Section 4-5-225(c) of UAPA, a court may issue a declaratory judgment and declare a challenged rule or order, such as lifetime parole requirements, invalid for violating constitutional provisions). Thus, the Court construes the Complaint to claim, under Section 4-5-225, that rules enacted pursuant to SORA violate the Ex Post Facto Clause of the Tennessee Constitution.

However, Section 4-5-225 has certain limitations. Chief among these is that it "permits challenges of the action of a particular agency, but not those of any individual or of the State itself." Smiley v. State, No. M201801263COAR3CV, 2019 WL 719190, at *2-3 (Tenn. Ct. App. Feb. 20, 2019), app. denied, (July 18, 2019) (citing Utley v. Rose, 55 S.W.3d 559, 562 (Tenn. Ct. App. 2001)). Thus, Brown has brought this claim against the wrong parties (the state and state officers), because the only proper party is the relevant state agency with purview over the challenged SORA rules. See id. at *3 (affirming dismissal of claim for declaratory relief challenging the constitutionality of state rules governing incarcerated sex offenders because the plaintiff failed to sue the proper agency). Accordingly, Brown's supplemental claim for declaratory relief under the Tennessee Constitution will be dismissed without prejudice to his reasserting the claim against the proper party, subject to any applicable procedural limitations.[10]

### 5. Request for Attorney's Fees

Finally, the Complaint suggests that Brown seeks attorney's fees under 42 U.S.C. § 1988. (See Doc. No. 1 at 1, Because Brown is not represented by an attorney, he is not entitled to attorney's fees. See Kay v. Ehrler, 900 F.2d 967, 969-70 (6th Cir. 1990) (holding that it is well-settled that pro se plaintiffs cannot recover attorney fees under 42 U.S.C. § 1988 for litigation of civil rights actions and that an attorney who litigated a civil rights action pro se was not entitled to

---

[10] The Court will also dismiss any purported claims against Defendants "John Doe" and "Jane Doe." The Complaint suggests no basis for relief against any unknown Defendant.

attorney fees). Thus, this request for relief will be denied without prejudice. See Frady v. CPL. Collins, No. 3:15-CV-399-TAV-CCS, 2016 WL 740446, at *4 (E.D. Tenn. Feb. 24, 2016) (dismissing request by pro se litigant for attorney's fees under Section 1988 at initial review).

## III. Conclusion

For these reasons, the Court concludes that Brown has stated colorable official-capacity Section 1983 claims for prospective injunctive relief against Governor Lee and TBI Director Rausch, bringing as-applied constitutional challenges based upon the Equal Protection Clause of the Fourteenth Amendment and the Ex Post Facto Clause of the United States Constitution. These claims for only prospective injunctive relief will be allowed to proceed for further development.

Brown's claims against the State of Tennessee and official-capacity claims for money damages against Governor Lee and TBI Director Rausch will be dismissed without prejudice for lack of subject-matter jurisdiction. Brown's supplemental claim under the Tennessee Constitution will be dismissed without prejudice. All other claims will be dismissed with prejudice. Brown's request for attorney's fees will be denied without prejudice.

An appropriate Order will enter.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE