IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| JOHN W. BROWN | ) | |
| | ) | |
| v. | ) | NO. 3:20-00916 |
| | ) | |
| BILL B. LEE, GOVERNOR OF THE | ) | |
| STATE OF TENNESSEE, et al. | ) | |

**TO:  Honorable Waverly D. Crenshaw, Jr., Chief District Judge**

# R E P O R T   A N D   R E C O M E N D A T I O N

By Order entered December 30, 2020 (Docket Entry No. 5), this *pro se* and *in forma pauperis* case was referred to the Magistrate Judge for pretrial proceedings under 28 U.S.C. §§ 636(b)(1)(A) and (B), Rule 72 of the Federal Rules of Civil Procedure, and the Local Rules of Court.

Pending before the Court are: (1) the motion to dismiss (Docket Entry No. 22) filed by Defendants Bill Lee and David Rausch; and, (2) the motion for a preliminary injunction (Docket Entry No. 26) filed by Plaintiff.  For the reasons set out below, the undersigned respectfully recommends that the motions to dismiss be denied and that the motion for a preliminary injunction be denied without prejudice to being refiled.

## I.  BACKGROUND

John W. Brown ("Plaintiff") is a 70 year old man who currently resides in Nashville, Tennessee.  In 1985, he was convicted by a jury in Hickman County, Tennessee of the crime of

1

aggravated rape and was sentenced to 40 years of imprisonment. In June 2015, he was released from incarceration upon parole and began living outside of prison.

During the time period that Plaintiff was incarcerated, the State of Tennessee passed and amended a series of laws creating a registration and monitoring program for individuals convicted of sexual offenses. *See generally Doe v. Haslam*, 2017 WL 5187117 (M.D. Tenn. Nov. 9, 2017 (summarizing legislative history of the program). The version of the law applicable to Plaintiff at the time of his release and currently in effect is the Tennessee Sexual Offender and Violent Sexual Offender Registration, Verification, and Tracking Act of 2004 ("SORA" or "Act"), Tenn. Code. Ann. §§ 40-39-201 *et seq*.

The mandates and prohibitions of the SORA are substantial and need not be fully set out herein for the purposes of determining the two pending motions.[1] As a general summary, the SORA: (1) classifies offenders as either "sexual offenders" or "violent sexual offenders" and requires this designation to be listed on the offender's Tennessee-issued driver's license; (2) requires offenders to complete an extensive initial registration of personal information, which is compiled in a database maintained by the Tennessee Bureau of Investigation ("TBI") and much of which is available to the public through an internet webpage; (3) imposes a duty on registrants to promptly report any changes to their registration information and to make in-person visits with a designated law enforcement agency to update and verify the information, on an annual basis for sexual offenders and four times a year for violent sexual offenders; (4) imposes an annual fee of $150.00, with other fees possibly imposed; and, (5) imposes restrictions on how, when, and where

---

[1] *See Reid v. Lee*, 476 F.Supp.3d 684, 688-93 (M.D. Tenn. 2020), for a detailed summary of the SORA's mandates and prohibitions.

a registrant can live, work, travel and visit, and interact with children and minors. Violations of the SORA's mandates and prohibitions are deemed crimes punishable by fines and imprisonment. Although a sexual offender may petition to be removed from the registry after ten years, a violent sexual offender must remain on the registry for the remainder of his or her life unless the offender's conviction is overturned or the offender is exonerated.

Shortly prior to his release from prison, Plaintiff was informed that he would be required to register under the SORA as a violent sexual offender. Although not explicitly stated by Plaintiff, it appears that he registered as required, has remained continuously registered since being released, and has not been charged with any violations of the SORA's requirements. Plaintiff's written request to the TBI to be removed from the SORA's registry was denied on or about May 7, 2020. As part of his release on parole, Plaintiff asserts that he is randomly visited at his residence by officers with the Tennessee Department of Parole, who check to see if he is living at the residence at which he is registered.

Plaintiff asserts that the imposition of the SORA's requirements have substantially interfered with his career, his ability to obtain housing, and his overall enjoyment of life since his release from incarceration. He alleges that he has been denied an employment opportunity, has been rejected for housing options because he is on the SORA registry, and has been unable to travel on a Caribbean cruise because he is on the SORA registry. He also asserts that he must spend several hours going to the Metro Police Department each time that he is required to update his registration paperwork as required by the SORA. He further asserts that he has been publicly labeled and shamed because "violent sexual offender" is printed on his driver's license and because the SORA website labels him as "violent."

3

## II. COMPLAINT

On October 23, 2020, Plaintiff filed a *pro se* and *in forma* pauperis complaint against Tennessee Governor Bill B. Lee ("Lee), Tennessee Bureau of Investigation ("TBI") Director David B. Rausch ("Rausch"), the State of Tennessee, the Metropolitan Government of Nashville and Davidson County ("Metro"), and John and Jane Does. *See* Complaint (Docket Entry No. 1). Seeking several forms of relief, Plaintiff complained that the SORA requirements violated his constitutional rights and he raised claims under several statutes and theories.

Upon initial review pursuant to 28 U.S.C. § 1915(e)(2)(B), the Court found that Plaintiff stated a colorable claim that the SORA, as applied to him, violated the Ex Post Facto Clause because of the punitive nature of its requirements. *See* Memorandum Opinion (Docket Entry No. 4) at 15-16. The Court also found that Plaintiff, a Black man, stated an arguable claim under the Equal Protection Clause of the Fourteenth Amendment based on the allegation that his placement on the SORA registry occurred as part of the systemic racially discriminatory administration of the SORA. *Id.* at 14-15. These two claims were permitted to proceed for further development as claims for prospective injunctive relief under 42 U.S.C. § 1983 against Defendants Lee and Rausch in their official capacities only. *Id*. at 18. The Court dismissed all other claims and defendants. Notably, among the claims dismissed were claims challenging Plaintiff's criminal conviction, claims brought under 42 U.S.C. § 1985 and under the Tennessee Constitution, claims brought under 28 U.S.C. §§ 551(a) and 5301, claims brought against the State of Tennessee, claims for money damages against Defendants Lee and Rausch in their individual capacities , and claims against Metro. *Id*. at 5-17.

Shortly after the Court's initial review was completed, Plaintiff filed a first amended complaint ("FAC") (Docket Entry No. 7). In the FAC, Plaintiff lists Lee, Rausch, and Metro as defendants, FAC at 2, realleges his Ex Post Facto claim, *id*. at 9-10, and includes additional allegations concerning Metro's enforcement of the SORA. *Id*. at 6-7. Other than reasserting the claim against Metro that was dismissed upon initial review, the FAC appears to be an attempt by Plaintiff to replead his case in conformity with the Court's initial review by dropping the claims and defendants that were dismissed upon initial review. The FAC also drops Plaintiff's Equal Protection claim.

### III. MOTION TO DISMISS

A. Motion to Dismiss and Response

Defendants seek dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Defendants first argue that Plaintiff has not shown that the SORA, as applied to him, is so punitive that it amounts to punishment in violation of the Ex Post Facto Clause. They then argue that Defendant Lee, as the Governor of Tennessee, is not a proper party to this litigation because there are no allegations that Lee has any involvement in the enforcement of the SORA and thus his Eleventh Amendment immunity to suit is not abrogated and he is not amenable to an official capacity suit for injunctive relief.[2]

Plaintiff has responded in opposition to the motion. *See* Omnibus Response (Docket Entry No. 30). Plaintiff points out the impactful injuries that he has alleged because of the SORA and

---

[2] The only claims remaining in the case are official capacity claims for prospective injunctive relief and a request for declaratory relief.

5

argues that these are sufficient to support his Ex Post Facto Clause claim. He further raises a number of arguments that are directed at claims that were dismissed upon initial review or at the Equal Protection claim that was dropped in the FAC.[3]

B. Rule 12(b)(6) Standard of Review

Defendants' Rule 12(b)(6) motion to dismiss is reviewed under the standard that the Court must accept all of the well pleaded allegations contained in the complaint as true, resolve all doubts and draw all reasonable inferences in Plaintiff's favor, and construe the complaint liberally in favor of the *pro se* Plaintiff. *See Kottmyer v. Maas*, 436 F.3d 684 (6th Cir. 2006); *Boswell v. Mayer*, 169 F.3d 384, 387 (6th Cir. 1999); *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 11-12 (6th Cir. 1987).

The complaint's allegations "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To establish the "facial plausibility" required to "unlock the doors of discovery," the plaintiff cannot rely on "legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action," but, instead, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).

---

[3] The Court notes that Plaintiff's response refers on multiple occasions to Defendants' "motions" to dismiss, even though there is only a single motion to dismiss that has been filed in this case, and also refers to arguments made by Metro, even though Metro has already been dismissed from the case and has not filed a motion to dismiss. It appears to the Court that much of Plaintiff's response was likely cut and pasted from a brief that was filed in another case. While the Court cannot fault a *pro se* litigant for relying upon arguments developed and filed in other cases, portions of Plaintiff's response are not particularly relevant to resolving the actual motion before the Court.

6

"[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679; *Twombly*, 550 U.S. at 556. Nonetheless, the court's role in determining a motion to dismiss is to determine only whether "the claimant is entitled to offer evidence to support the claims," not whether the plaintiff can ultimately prove the facts alleged. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

C. Analysis

Defendants do not set out a procedural argument against Plaintiff's Ex Post Facto claim. Rather, they argue that his claim should be dismissed because his allegations do not state a claim for relief. The Court disagrees.

Article I of the United States Constitution prohibits a State from passing "ex post facto Laws." U.S. Const., Art. I, § 10, cl.1. In its most straightforward formulation, the Ex Post Facto Clause dictates that "[l]egislatures may not retroactively alter the definition of crimes or increase the punishment for criminal acts." *Collins v. Youngblood*, 497 U.S. 37, 43 (1990). The breadth of the protection of the Ex Post Facto Clause, however, is not limited to its most straightforward application, and it is well settled that its protection applies to more than just express changes to the particular statutory sentence or definition associated with an offense. *Peugh v. United States*, 569 U.S. 530, 539 (2013) (noting that the Supreme Court has "never accepted the proposition that a law must increase the maximum sentence for which a defendant is eligible in order to violate the Ex Post Facto Clause.") (citing *Lindsey v. Washington*, 301 U.S. 397 (1937)). For that reason, some statutory provisions that do not impact the sentence or definition of a crime may have a

7

sufficiently detrimental and disadvantageous impact upon an offender that the provisions fall within the scope of the Ex Post Facto Clause.

In this context, courts have grappled whether the Ex Post Facto Clause prohibits the application of registration and monitoring laws to sexual offenders whose convictions occurred prior to enactment of such laws. *See Smith v. Doe*, 538 U.S. 84 (2003) (upholding Alaska's sexual offender registration law); *Does #1-5 v. Snyder*, 834 F.3d 696 (6th Cir. 2016) (finding that Michigan's sexual offender registration law violated Ex Post Facto Clause). Relevant to the case at hand, the Sixth Circuit has twice upheld Tennessee's sexual offender registration and monitoring laws against Ex Post Facto challenges in *Cutshall v. Sundquist*, 193 F.3d 466, 476-77 (6th Cir. 1999), and *Doe v. Bredesen*, 507 F.3d 998 (6th Cir. 2007). However, both decisions dealt with previous versions of the Tennessee sexual offender registration law and not with the current version that applies to Plaintiff and is at issue in this case.

While the Sixth Circuit has not yet had the occasion to review the current SORA, lower courts have conducted such reviews and have found (1) that *Doe v. Bredesen* does not control such review because the SORA has been amended in meaningful respects several times subsequent to the decision in *Doe v Bredesen* and (2) that the current version of the SORA, with its new and increased mandates and prohibitions, violates the Ex Post Facto Clause when analyzed under the "intent-effects" test that is applicable. *See Doe #1 v. Lee*, 518 F. Supp. 3d 1157, 1204 (M.D. Tenn. 2021) (upon summary judgment motion, the court found the SORA to violate the Ex Post Facto Clause); *Doe v. Rausch*, 461 F. Supp. 3d 747, 769 (E.D. Tenn. 2020) (same); *Doe v. Rausch*, 382 F. Supp. 3d 783, 788 (E.D. Tenn. 2019) (same).

8

Furthermore, several courts have reviewed and denied motions to dismiss brought in cases raising Ex Post Facto challenges to the SORA, These courts found no merit in requests by the defendants for Rule 12(b)(6) dismissals in the face of "as applied" challenges supported by allegations in the pleadings of disadvantageous restrictions and consequences on the plaintiffs caused by the SORA. *See Doe v. Lee*, 2021 WL 1907813, at *13 (M.D. Tenn. May 12, 2021) (Trauger, J); *Reid v. Lee*, 476 F. Supp. 3d 684, 706 (M.D. Tenn. 2020); *Jackson v. Rausch*, 2020 WL 7496528, at *4 (E.D. Tenn. Dec. 21, 2020); *Jordan v. William*, 2020 WL 4676477, at *18 (M.D. Tenn. Aug. 12, 2020) (Trauger, J.); *Doe v. Gwyn*, 2018 WL 1957788 (E.D. Tenn. Apr. 25, 2018); *Doe v. Haslam*, 2017 WL 5187117, at *19 (M.D. Tenn. November 9, 2017); *Doe v. Haslam*, 2017 WL 4782853, at *6 (E.D. Tenn. Oct. 23, 2017).[4]

Nothing about the instant case significantly distinguishes it from the above noted cases at this point in the proceedings. Plaintiff alleges that he was placed on the SORA for a conviction that occurred before SORA became law, that the SORA will apply to him for the rest of his life, and that his request to be removed from the SORA registry has been denied. He further alleges that he has suffered several, specific onerous and ongoing injuries to his ability to live as a result of being placed on the SORA and of being forced to comply, under the possible penalty of criminal prosecution, with the SORA's mandates. In short, Plaintiff has alleged a number of affirmative

---

[4] Addressing the current state of jurisprudence surrounding the SORA and the Ex Post Facto Clause, Judge Trauger made the following succinct observation in *Does #1-9 v. Lee:*
> The question of whether Tennessee's ex post facto application of its sexual offender requirements to individuals like these is illegal under *Snyder* may not be entirely beyond debate, but the issue has been addressed so clearly and so many times that the court assumes that all of the attorneys and government officials involved understand the basic jurisprudential lay of the land.

2021 WL 5761039, at *2.

9

disabilities or restraints imposed on him by the SORA and some of these restrictions could be considered traditional forms of punishment. The Court further notes that Plaintiff proceeds *pro se* in this case and the allegations of his pleadings are therefore required to be liberally construed.

On the bare allegations of Plaintiff's pleadings, which are all that can be considered for purposes of resolving the motion to dismiss, the Court cannot determine whether these restrictions have a rational connection to a non-punitive purpose or if they are excessive with respect to such purpose. *See Doe v. Haslam*, 2017 WL 5187117, at *20 ("At this stage in the proceedings, the Court simply cannot know the full extent of the Act's effects and therefore cannot reach a conclusion on whether those effects are punitive under the rubrics set forth in *Snyder*. The Court accordingly cannot conclude that the Act is non-punitive as a matter of law. Plaintiffs are entitled to the opportunity to demonstrate that the Act's effects are punitive, just as Defendants will have the opportunity to demonstrate that they are not."). Accordingly, accepting the allegations of Plaintiff's pleadings as true, as required, the Court concludes that Plaintiff has alleged at least a plausible claim that the present version of the SORA is so punitive in effect as to violate the Ex Post Facto Clause. Defendants' request for dismissal for failure to state a claim for relief should therefore be denied.

Defendants primarily argue that the effect of the SORA is not so punitive that it amounts to punishment because Plaintiff is currently a parolee who is already subject to some restrictions as a part of his parole supervision. *See* Memorandum in Support at 4-5. The Court is not persuaded by this argument. The exact nature of Plaintiff's parole restrictions are not part of the record at this time, and it is complete speculation as to whether the parole restrictions are less than, equal to, or more than the mandates and prohibitions created by the SORA. Further, the fact that

10

Plaintiff is simultaneously subject to both SORA mandates and prohibitions and to parole restrictions does not negate the possible punitive nature of the SORA mandates and prohibitions. As this Court cogently and recently pointed out in *Doe v. Lee*, when addressing a similar argument:

> Ultimately, if anything, the fact that Doe's registry conditions sometimes so closely resemble a super-charged version of parole bolsters his Ex Post Facto Clause claim. Doe is subject to his parole conditions because his parole is part of his prospectively authorized criminal punishment, as the Constitution permits. If the State of Tennessee had tried to impose such a sentence ex post facto, it would have been illegal. Putting Doe on an even more demanding version of parole retroactively, but calling it a registry status, is no more permissible.

2021 WL 1907813, at *14.

As a secondary argument against Plaintiff's Ex Post Facto claim, Defendant Lee contends that he is not an appropriate defendant to the claim for injunctive relief under *Ex parte Young*, 209 U.S. 123, 157 (1908). Defendant Lee argues that "Plaintiff has failed to allege that any enforcement of the Act or an attempt to enforce the Act has been made by the Governor, and thus his allegations fail to state a claim against the Governor." *See* Memorandum in Support (Docket Entry No. 23) at 7. Although Defendant Lee references a case from the Eastern District of Tennessee that supports his position, *see Kelly v. Lee*, 2020 WL 2120249, at *3 (E.D. Tenn. May 4, 2020), this Court has previously rejected this same argument when raised by Defendant Lee's predecessor as Governor. *See Doe v. Haslam*, 2017 WL 5187117, at *9. Defendant Lee offers no argument as to why the Court should not follow the analysis and decision in *Doe v. Haslam* on this issue. Indeed, Defendant Lee fails to even refer to and address the Court's ruling on the issue in *Doe v. Haslam*. The motion to dismiss should therefore be denied as to this argument.

11

## V. MOTION FOR PRELIMINARY INJUNCTION

A. Motion for a Preliminary Injunction and Response

Subsequent to the Defendants filing their motion to dismiss, Plaintiff filed the pending motion for a preliminary injunction. He seeks to prohibit Defendants from continuing to enforce the SORA against him because the SORA imposes mandates and prohibitions on him that are damaging and in violation of the Ex Post Facto Clause. Because of the ongoing nature of the SORA and its harmful effects, Plaintiff asserts that he is entitled to preliminary injunctive relief. Plaintiff relies solely upon the allegations of his pleadings as support for his motion. Defendants oppose the motion, arguing primarily that Plaintiff has no likelihood of success on the merits of his claim. *See* Response in Opposition (Docket Entry No. 31).

B. Legal Standard

"A district court must consider four factors when determining whether to grant or deny a preliminary injunction: (1) the plaintiff's likelihood of success on the merits; (2) whether the plaintiff may suffer irreparable harm absent the injunction; (3) whether granting the injunction will cause substantial harm to others; and (4) the impact of an injunction upon the public interest." *Deja Vu of Nashville, Inc. v. Metro. Gov't of Nashville & Davidson Cty.*, 274 F.3d 377, 400 (6th Cir. 2001). Generally, these "four considerations are factors to be balanced, not prerequisites that must be met." *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 542 (6th Cir. 2007) (citation and quotation omitted). However, the irreparable injury factor is "indispensable." *D.T. v. Sumner Cty. Sch.*, 942 F.3d 324, 327 (6th Cir. 2019). Whether to grant

12

an injunction is within the discretion of the district court. *Tenn. Scrap Recyclers Ass'n v. Bredesen*, 556 F.3d 442, 447 (6th Cir. 2009).

C. Analysis

The Court should exercise its discretion and deny the request for a preliminary injunction at this time because the request is simply insufficiently supported by evidence in the record that justifies the issuance of a preliminary injunction. As the moving party, Plaintiff bears the burden of establishing that the a preliminary injunction should be granted. *See Jones v. Caruso*, 569 F.3d 258, 265 (6th Cir. 2009). The Court finds that he has not met his burden.

A preliminary injunction is an "extraordinary remedy." *Overstreet v. Lexington-Fayette Urban County Government*, 305 F.3d 566, 573 (6th Cir. 2002); *Patel v. AR Grp. Tennessee, LLC*, 2020 WL 5849346, at *5 (M.D. Tenn. Oct. 1, 2020) (Richardson, J.). Because the issuance of a preliminary injunction is an extraordinary remedy, the proof required for the plaintiff to obtain a preliminary injunction is much more stringent than the proof required to survive a summary judgment motion. *Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000). A party seeking a preliminary injunction must present "more than 'scant evidence' to substantiate [its] allegations." *Patel,* 2020 WL 5849346, at*4 (quoting *Libertarian Party of Ohio v. Husted*, 751 F.3d 403, 417 (6th Cir. 2014)).

The threshold and critical problem with Plaintiff's motion is that it is unsupported by any evidence. Plaintiff has not filed his own affidavit or declaration and has not filed any other supporting exhibits or evidence in support of the motion. Although Plaintiff states in his motion that he submits "attached exhibits" in support of the motion (*see* Motion for Preliminary Injunction

13

at 1), no exhibits were filed in support of the motion. The allegations of Plaintiff's FAC, which is the operative complaint that forms the basis for his lawsuit, are merely unsupported allegations. While these allegations, when taken as true, are sufficient to state a plausible claim for relief that defeats Defendants' motion to dismiss, unsupported allegations are not sufficient to support a request for a preliminary injunction.[5]

The Court finds this absence to be particularly significant given that Plaintiff is requesting that the Court enjoin state agents from enforcing a statute that is currently in effect. Clearly, the issue of the constitutionality of the statute is the central issue in this case, and Plaintiff is not required to conclusively prove his case in order to gain a preliminary injunction. Nonetheless, the request to enjoin enforcement of the statute must be supported by actual evidence that adds substance and detail to the allegations made by Plaintiff about the impact of the SORA on his situation. Without this type of evidence being made a part of the record before the Court, there is simply nothing upon which the Court can make the necessary determinations required for the issuance of a preliminary injunction. While the Court recognizes that Plaintiff is proceeding *pro se*, he must still take the steps necessary to support his motion and carry his burden of showing the necessity of the extraordinary relief requested.

---

[5] The Court recognizes that Plaintiff's original complaint was a verified complaint that can be viewed as akin to a declaration. However, the bulk of the original complaint was directed at claims that were dismissed upon initial review and contained only a brief allegation about the SORA: "Plaintiff submits that in 2016 he was denied employment opportunity because he is on the registry. Plaintiff alleges that he was denied housing with the Nashville Metropolitan Development and Housing because being on the register as a violent sexual offender." *See* Docket Entry No. 1 at 10. Because the FAC greatly expounds upon his allegations regarding the impact of the SORA, the Court does not view the supplanted original complaint as sufficiently placing into the record evidence that supports the allegations of the FAC and thus the motion for a preliminary injunction.

14

Accordingly, Plaintiff's motion for a preliminary injunction should be denied. However, the denial of his motion should be without prejudice to Plaintiff's ability to renew his request for a preliminary injunction and to provide proper support for a renewed request.

## RECOMMENDATION

Based on the forgoing, it is respectfully RECOMMENDED that:

(1) the motion to dismiss (Docket Entry No. 22) filed by Defendants Bill Lee and David Rausch be DENIED; and,

(2) the motion for a preliminary injunction (Docket Entry No. 26) filed by Plaintiff be DENIED without prejudice to refiling.

ANY OBJECTIONS to this Report and Recommendation must be filed within fourteen (14) days of service of this Report and Recommendation and must state with particularity the specific portions of this Report and Recommendation to which objection is made. *See* Rule 72(b)(2) of the Federal Rules of Civil Procedure and Local Rule 72.02(a). Failure to file written objections within the specified time can be deemed a waiver of the right to appeal the District Court's Order regarding the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Any response to the objections must be filed within fourteen (14) days after service of objections. *See* Federal Rule 72(b)(2) and Local Rule 72.02(b).

                    Respectfully submitted,

                    BARBARA D. HOLMES
                    United States Magistrate Judge